**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| Plaintiff, | |
| v. | No. 18-3027-01-CR-S-RK |
| **WILLIAM W. CHAMLEE**, | |
| Defendant. | |

**PLEA AGREEMENT**

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Timothy A. Garrison, United States Attorney, Nhan D. Nguyen, Assistant United States Attorney, and Patrick A.N. Carney, Assistant United States Attorney, and the defendant, William W. Chamlee ("the defendant"), represented by Jason Coatney.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2. **Defendant's Guilty Plea**. The defendant agrees to and hereby does plead guilty to Count One of the Indictment, charging him with a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), that is possession, with intent to distribute, a mixture or substance containing a detectable amount of methamphetamine. The defendant agrees to and hereby does plead guilty to Count Four of the

Indictment charging him with a violation to 18 U.S.C. § 2250(a), that is failing to register as a sex offender. Finally, the defendant agrees to and hereby does plead guilty to Count Five of the Indictment charging him with a violation of Title 18 U.S.C. § 472, that is uttering counterfeit obligations or securities. By entering into this plea agreement, the defendant admits that he knowingly committed these offenses, and is, in fact, guilty of these offenses.

3. **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offenses to which the defendant is pleading guilty are as follows:

## Introduction

On July 17, 2014, William W. CHAMLEE (CHAMLEE) was convicted of video voyeurism, a felony, in the Circuit Court of Pulaski County, Arkansas. CHAMLEE's victim was a 10-year-old female, and based upon his conviction, CHAMLEE was a "Tier III" offender with an obligation to register as a sex offender quarterly for the remainder of his lifetime.

On November 3, 2016, Deputy United States Marshal (DUSM) Story Schankel received an investigative lead from Senior Inspector (SI) Joshua Kaplan in Little Rock, Arkansas, regarding CHAMLEE. SI Kaplan informed DUSM Schankel that CHAMLEE was wanted in Arkansas for failing to register as a sex offender and requested assistance in locating and apprehending him. Based upon information obtained by law enforcement, CHAMLEE was believed to be residing at a residence in Sparta, Christian County, within the Western District of Missouri.

## CHAMLEE's Arrest

On November 4, 2016, DUSMs Schankel and Anthony Cable and Christian County, Missouri, Sheriff's Office (CCSO) Detectives Shayne Duryea, David Loe, and Kevin Crites responded to CHAMLEE's residence in Sparta, Missouri, in an attempt to locate and arrest CHAMLEE. After exiting their vehicles, a female exited a camper located on the property. The female stated that CHAMLEE was inside the camper.

Shortly thereafter, DUSM Cable announced their presence and instructed CHAMLEE to exit the camper. Initially, he refused, but after approximately 10 minutes, CHAMLEE came to the front door of the camper and surrendered. Detective Crites placed CHAMLEE in handcuffs and, for officer safety, asked CHAMLEE, "Is there anything in there we need to know about." CHAMLEE responded, "You're welcome to search." Detective Crites restated his question asking CHAMLEE if there was anything dangerous in the camper, and CHAMLEE responded that there was "a pistol" inside the camper.

2

After speaking with CHAMLEE, Detective Crites entered the camper, and asked CHAMLEE where the firearm was located. CHAMLEE responded that the firearm was in the cabinet above the refrigerator. Detective Crites then proceeded to "clear" the camper. After clearing the camper, United States Drug Enforcement Administration (DEA) Task Force Officer (TFO) Brett Leslie was contacted.

The camper was searched. Detective Crites photographed the evidence seized while Detective Duryea seized the evidence. The following items were found: 1) in the cabinet above the refrigerator, in a black bag, 20 rounds of .22-caliber ammunition and a Jennings brand, J-22 model, .22-caliber, semi-automatic pistol, serial number 495638; 2) on a table, in an M&M box, and from a black bag on the floor below the table, a total of approximately 17 grams of methamphetamine, a distributive amount; 3) within the same bag on the floor below the table, counterfeit U.S. currency that was later placed in an evidence bag labeled 22714; 4) on the seat near the table, from CHAMLEE's wallet, counterfeit U.S. currency that was later placed in an evidence bag labeled 22718; and 5) a computer and printer used by CHAMLEE to create the counterfeit U.S. currency.

Missouri State Highway Patrol (MSHP) Criminalist Abigayle Goeller performed a quantitative analysis of a portion of the methamphetamine seized. The analysis revealed that the methamphetamine seized was 100 percent pure.

CHAMLEE admits that he intended to distribute the approximately 17 grams of methamphetamine seized.

### DUMS Shankel's Interview of CHAMLEE

DUSMs Schankel and Cable interviewed CHAMLEE post-*Miranda* at the Christian County, Missouri, Sheriff's Office. During the interview, CHAMLEE admitted that he was wanted for failing to register as a sex offender in Arkansas. CHAMLEE knew that he was required to register, but failed to do so. CHAMLEE told law enforcement that Arkansas authorities had conducted a compliance check at his Arkansas residence. During that check, CHAMLEE explained that law enforcement had found a firearm and drugs, and he was subsequently arrested. CHAMLEE then left Arkansas because he was facing a lengthy prison sentence. CHAMLEE knew that law enforcement would be looking for him because he had failed to register as a sex offender and to appear on his pending charges.

DUSM Schankel asked CHAMLEE about his requirement to register as a sex offender. CHAMLEE responded that he was aware that he was required to register as a sex offender when he came to Missouri, and that his failure to do so constituted a new crime. CHAMLEE explained that he did not register as a sex offender in Missouri because of his outstanding arrest warrant in Arkansas. CHAMLEE further explained that he had previously signed registration requirement documents while living in Arkansas and was aware that he was required to register as a sex offender if he left Arkansas for more than three days, which he did when he moved to Missouri. CHAMLEE told DUSM that "he was just trying to avoid going back to prison for the rest of his life."

3

CHAMLEE admitted that he resided at his residence in Sparta, Missouri, for three months and arrived in Missouri from Arkansas in the middle of August 2016.

Regarding the items found in the camper, CHAMLEE admitted that there was approximately 17 grams of methamphetamine, drug paraphernalia, and a firearm in his camper and he traded drugs for the firearm in Arkansas, and brought it with him when he traveled from Arkansas to Missouri.

On November 9, 2016, DUSM Schankel contacted Stacy Hinson with the MSHP Sex Offender Registry. Hinson confirmed that there was no record of CHAMLEE registering as a sex offender in Missouri.

### TFO Leslie's Interview of CHAMLEE

After speaking with DUSM Schankel, TFO Leslie spoke with CHAMLEE. CHAMLEE stated that he met a man through Craigslist, from whom he ultimately began buying methamphetamine. CHAMLEE admitted that he buys an ounce a week from that source and had been doing so for the past two months. CHAMLEE told TFO Leslie that he has purchased at least eight to 10 ounces of methamphetamine from his source and he was paying $700 to $800 per ounce.

When asked how long he had been creating counterfeit U.S. currency, CHAMLEE stated for "some time and sometimes it passes." CHAMLEE admitted that he learned how to create counterfeit U.S. currency while in prison. CHAMLEE admitted that he learned how to create fake IDs. CHAMLEE stated that while the counterfeit U.S. currency would pass at times, his fake IDs never passed.

TFO Leslie then asked CHAMLEE about the firearm located in his camper. CHAMLEE reiterated that he had traded methamphetamine for the firearm when he was in Arkansas.

### Counterfeit U.S. Currency Investigation

In addition to discovering the drugs and firearm in his camper, law enforcement also discovered numerous counterfeit bills of varying amounts of U.S. currency and equipment capable of creating counterfeit U.S. currency. The equipment included an HP Printer/Scanner Model # FR5S32A with serial number F5s28-90087, a Hewlett Packard All-In-One computer with serial number 3C4510NQF, and an HP Printer with serial number TH67T3J1PG. In addition to the counterfeiting equipment, law enforcement located U.S. currency that was confirmed by the United States Secret Service (USSS) to be counterfeit. The counterfeit U.S. currency found in CHAMLEE's camper included $2190 in various counterfeit bills that included denominations of $10, $20, $50, and $100. The $100 denominations were One-Hundred Dollar Federal Reserve Notes, Series of 2003(A), Serial Number FB197676602D.

On April 26, 2017, the counterfeit U.S. notes were physically and microscopically examined by USSS agents. Agents determined the notes were counterfeit Ink Jet notes in $10, $20, $50, and $100 denominations.

On April 27, 2017, agents with the USSS searched the Counterfeit Tracking Database. The search revealed that as of April 27, 2017, approximately $90 in successful passes of the denominations had occurred within the Western District of Missouri and the surrounding areas.

4. **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in paragraph 3 and other portions of this plea agreement will be used for the purpose of determining his guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the indictment, as well as all other uncharged, related criminal activity, may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charges to which he is pleading guilty.

5. **Statutory Penalties.** The defendant understands that, upon his plea of guilty to Count One of the Indictment, charging him with possession, with intent to distribute, a mixture or substance containing a detectable amount of methamphetamine pursuant to 21 U.S.C. § 841(a)(1) and (b)(1)(C), the maximum penalty the Court may impose is not more than 20 years' imprisonment, not less than three years' supervised release, a $1 million fine, and a $100 mandatory special assessment per felony count of conviction, which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class C felony.

The defendant understands that upon his plea of guilty to Count Four of the Indictment charging him with failing to register as a sex offender pursuant to 18 U.S.C. § 2250(a), the maximum penalty the Court may impose is not more than 10 years' imprisonment, a $250,000

fine, not less than five years' supervised release, and a $100 mandatory special assessment per felony count of conviction which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class C felony.

The defendant understands that upon his plea of guilty to Count Five of the Indictment charging him with uttering counterfeit obligations or securities pursuant to 18 U.S.C. § 472, the maximum penalty the Court may impose is not more than 20 years' imprisonment, a $250,000 fine, not more than three years' supervised release, and a $100 mandatory special assessment per felony count of conviction which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class C felony.

      6.    **Sentencing Procedures.**  The defendant acknowledges, understands and agrees to the following:

      a.    in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable";

      b.    the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

      c.    in addition to a sentence of imprisonment, the Court may impose a term of supervised release of not less than three years for Count One, not less than five years for Count Four, and not more than three years for Count Five;

      d.    if the defendant violates a condition of his supervised release, the Court may revoke his supervised release and impose an additional period of imprisonment of up to two years for Counts Four and Five, and without credit for time previously spent on supervised release. Concerning Count Four, if the defendant commits any criminal offense as defined in 18 U.S.C. § 3583(k), the Court may impose an additional period of imprisonment of not less than five years, and without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which can be no less than five years for Count Four and not

6

more than three years for Count Five, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

    e.    the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

    f.    any sentence of imprisonment imposed by the Court will not allow for parole;

    g.    the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office; and

    h.    the defendant may not withdraw his guilty plea solely because of the nature or length of the sentence imposed by the Court.

7.    **Government's Agreements.**  Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against the defendant for any federal criminal offenses related to the defendant's possession, with intent to distribute, a mixture or substance containing a detectable amount of methamphetamine, his failure to register as a sex offender, and his uttering counterfeit obligations or securities, for which it has venue and which arose out of the defendant's conduct described above. Additionally, the United States Attorney for the Western District of Missouri agrees to dismiss Counts Two, Three, Six, and Seven of the Indictment at sentencing.

    The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

7

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives his right to challenge the initiation of the dismissed or additional charges against him if he breaches this agreement. The defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional charges are initiated against him following a breach of this agreement. The defendant further understands and agrees that, if the Government elects to file additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

8. **Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the counts to which he has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

9. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and

its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw his pleas of guilty only if the Court rejects the plea agreement, or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that, if the Court accepts his pleas of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, he will not be permitted to withdraw his pleas of guilty.

      10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

      a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable";

      b. The applicable Guidelines sections for the offenses of conviction are U.S.S.G. § 2D1.1 for Count One, U.S.S.G. § 2A3.5 for Count Four, and U.S.S.G. § 2B5.1 for Count Five. The parties have no agreement regarding a base offense level;

      c. The parties have no agreement regarding the applicability of any enhancements applicable to the specific facts of this case and are free to object to the application of any enhancements applied in the presentence investigation report;

      d. The defendant has admitted his guilt and clearly accepted responsibility for his actions, and has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, he is entitled to a 3-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines. The Government, at the time of sentencing, will file a written motion with the Court to that effect, unless the defendant: (1) fails to abide by all of the terms and conditions of this plea agreement and his pretrial release; or

9

(2) attempts to withdraw his guilty pleas, violates the law, or otherwise engages in conduct inconsistent with his acceptance of responsibility;

  e. There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine his applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

  f. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does <u>not</u> bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw his plea of guilty;

  g. The parties agree to recommend a sentence between 15 and 20 years' imprisonment. The agreement by the parties is not binding upon the Court or the United States Probation Office, and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable";

  h. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the indictment. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

  i. The defendant understands and agrees that the factual admissions contained in paragraph 3 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed upon Guidelines calculations contained in this agreement.

  11. **Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in paragraph 10 and its

10

subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

12. **Change in Guidelines Prior to Sentencing.** The defendant agrees that, if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by the defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

13. **Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

    a.    oppose or take issue with any position advanced by the defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

    b.    comment on the evidence supporting the charges in the Indictment;

    c.    oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed, and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

    d.    oppose any post-conviction motions for reduction of sentence, or other relief.

14. **Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

    a.    the right to plead not guilty and to persist in a plea of not guilty;

    b.    the right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

11

c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

d. the right to confront and cross-examine the witnesses who testify against him;

e. the right to compel or subpoena witnesses to appear on his behalf; and

f. the right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that, by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that, if he pleads guilty, the Court may ask him questions about the offenses to which he pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement. The defendant also understands that he has pleaded guilty to felony offenses and, as a result, will lose his right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

15. **Waiver of Appellate and Post-Conviction Rights.**

a. The defendant acknowledges, understands and agrees that, by pleading guilty pursuant to this plea agreement, he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct; and

b. The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of: (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this

12

waiver and may, as part of the Government's appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16. **Financial Obligations.** By entering into this plea agreement, the defendant represents that he understands and agrees to the following financial obligations:

   a. The Court must order restitution to the victims of the offense and associated acts to which the defendant is pleading guilty in Count Five. The defendant agrees that the Court may order restitution in connection with the conduct charged in any counts of the indictment which are to be dismissed and all other uncharged, related criminal activity;

   b. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine;

   c. The defendant will fully and truthfully disclose all assets and property in which he has any interest, or over which the defendant exercises control, directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full;

   d. Within ten (10) days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit: (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility;

   e. At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets and restitution;

   f. The defendant hereby authorizes the USAO to obtain a credit report pertaining to him to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence;

   g. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $300 by submitting a satisfactory form of payment to the

Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing;

  h. The defendant certifies that he has made no transfer of assets or property for the purpose of: (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; or (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that he will make no such transfers in the future; and

  i. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

17. **Waiver of FOIA Request.** The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

18. **Waiver of Claim for Attorney's Fees.** The defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

19. **Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the

14

defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that, in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal, or any leads from such statements or testimony, shall be admissible against him in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

20. **Defendant's Representations.** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorneys, or any other party to induce him to enter his plea of guilty.

21. **No Undisclosed Terms.** The United States and the defendant acknowledge and agree that the above stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any

written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

22. **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any

drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

                                          **Timothy A. Garrison**
                                          United States Attorney

                                    By

Dated:  7-1-2019                       */s/ Nhan D. Nguyen*
                                          **NHAN D. NGUYEN**
                                          Assistant United States Attorney
                                          Missouri Bar No. 56877

                                    By

Dated:  7-1-2019                       */s/ Patrick A.N. Carney*
                                          **PATRICK A.N. CARNEY**
                                          Assistant United States Attorney
                                          Kansas Bar No. 20254

      I have consulted with my attorneys and fully understand all of my rights with respect to the offenses charged in the Indictment. Further, I have consulted with my attorneys and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorneys. I understand this plea agreement and I voluntarily agree to it.

Dated: 7-1-2019                        */s/ William W. Chamlee*
                                            **William W. Chamlee**
                                            Defendant

      I am Defendant William W. Chamlee's attorney. I have fully explained to him his rights with respect to the offenses charged in the Indictment. Further, I have reviewed with him the provisions of the Sentencing Guidelines that might apply in this case. I have carefully reviewed every part of this plea agreement with him. To my knowledge, William W. Chamlee's decision to enter into this plea agreement is an informed and voluntary one.

Dated:  7-1-2019                       */s/ Jason Coatney*
                                            **Jason Coatney**
                                          Attorney for Defendant